IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL NO. 2:13CV14-FDW-DSC

| | |
|---|---|
| CASEY ELLISON GIBBY,<br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social<br>Security Administration,<br>    Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #12) and "Brief … in Support ..." (document #13), both filed September 16, 2013; and Defendant's "Motion for Summary Judgment" (document #14) and "Memorandum in Support ..." (document #15), both filed October 18, 2013. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

### I. PROCEDURAL HISTORY

On September 29, 2004, Plaintiff filed an application for a period of disability and Social

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on July 18, 2013, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

Security disability insurance benefits ("DIB") alleging that she was unable to work from July 18, 2003 through her date last insured on December 31, 2008.[2] (Tr. 33, 60).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing which was held on December 20, 2007. (Tr. 425-53). On February 27, 2008, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 13-25). The Appeals Council denied Plaintiff's request for review (Tr. 5-8), and Plaintiff appealed to the United States District Court for the Western District of North Carolina.

On October 27, 2011, the Court remanded the matter for a new hearing. The basis for the remand was the ALJ's failure to consider whether Plaintiff satisfied the criteria for Listing 12.05 - Mental Retardation, discussed below.[3] Gibby v. Astrue, NCWD File No. 2:09cv29-MR, "Memorandum of Decision and Order" at 6 (document #16) (remanding because "ALJ concluded in summary fashion or without any supporting analysis that the Plaintiff has no impairment or combination of impairments that meets or equals any listing.")

The ALJ subsequently held hearings on June 22, 2012 (Tr. 646-658) and August 22, 2012. (Tr. 659-688).

On November 19, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 454-469). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful

---

[2]Since Plaintiff acquired sufficient quarters of coverage to remain insured for DIB only through December 31, 2008 (Tr. 60), she has the burden of showing that she was disabled on or before that date. See 20 C.F.R. §§ 404.101, 404.130 404.131.

[3]On January 28, 2013, the Administration formally proposed replacing the term "mental retardation" in Listing 12.05 with "intellectual disability" because the former term "has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." Change In Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 5755, 5755-5756 (proposed Jan. 28, 2013). This proposal is pending.

activity since her alleged onset date. The ALJ also found that Plaintiff suffered from a learning disorder, depression, obesity, and osteoarthritis of the knee, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 459).

As the Court previously ordered, the ALJ considered whether Plaintiff met Listing §12.05 at Step Three of the sequential evaluation process.[4] The ALJ found that Plaintiff did not meet Listing 12.05D because she had only mild restrictions in activities of daily living; moderate difficulties with social functioning, concentration, persistence, and pace; and no episodes of decompensation. (Tr. 461-462). The ALJ then concluded that Plaintiff did not meet Listing 12.05A because she admitted having no problems caring for her own personal needs or for her children. (Tr. 462). The ALJ next determined that Plaintiff did not meet the requirements for Listing 12.05B because there was no evidence in the record that Plaintiff had a valid IQ score of 59 or less. (Tr. 462). The ALJ found that Plaintiff had a verbal IQ score of 69 in June 2005, as well as another physical or other mental impairment imposing an additional and significant

---

[4] Listing 12.05 – Mental Retardation is "[c]haracterized by significantly sub-average general intellectual functioning with deficits in adaptive functioning." This "capsule definition" is followed by "severity prongs." In order to satisfy the Listing, a claimant must meet the requirement of both the capsule definition and one of the four severity prongs. The four severity prongs are:

    A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or
    B. A valid verbal, performance, or full scale IQ of 59 or less; or
    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation each of extended duration.

work-related limitation of function. However, the ALJ concluded that her impairment did not meet Listing 12.05C. (Tr. 463). In reaching that conclusion, the ALJ noted that Plaintiff was administered the Wechsler Intelligence Scale for Children – Revised ("WISC-R") in February 1989. She achieved a verbal IQ score in the 9th percentile, a performance IQ score in the 73rd percentile, and a full scale IQ score in the 32nd percentile. Those results exceeded her June 2005 IQ score, which was in the 5th percentile. (Tr. 463). The ALJ also noted that while Plaintiff received special services in basic reading skills and comprehension, her school records did not indicate that she was mentally retarded. (Tr. 463). The ALJ added that Plaintiff was found to have an IQ in the 90's at her March 2005 consultative examination. (Tr. 463). The ALJ also noted that Dr. Cottone, the medical expert, testified that there was no support for a finding that Plaintiff met this Listing since her school records reflected that she took college preparatory classes and earned mostly 80's and 90's. (Tr. 463).

At Step Four, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[5] perform a range of light work.[6] Specifically, the ALJ found that Plaintiff:

> had the RFC to perform a range of sedentary work, as defined in 20 C.F.R. § 404.1567(a), except that she could lift, carry, push, and pull a maximum of 10 pounds occasionally and less than 10 pounds frequently; stand or walk for 2 hours in an 8-hour day; and sit for 6 hours in an 8-hour day…. that Plaintiff could never climb ladders, ropes, or scaffolds; she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she had to avoid concentrated exposure to hazards; she could concentrate, persist, and work at

---

[5]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

>pace to perform simple, routine, and repetitive tasks at SVP levels 1 and 2 for extended periods (2-hour periods during an 8-hour workday); and she could interact occasionally with the public and appropriately with supervisors and co-workers in a stable, routine setting.

(Tr. 463). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. He further found that Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms was not entirely credible, and that those symptoms would not preclude sedentary work as described in the assessed RFC. Based upon that RFC, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 468).

The ALJ then properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("V.E.") identified a representative sedentary job (surveillance system monitor) that Plaintiff could perform. The ALJ concluded that based upon the framework of the V.E.'s testimony and Medical-Vocational Rule 201.28, there were other jobs in the national economy that Plaintiff could perform, and therefore she was not disabled. (Tr. 468-469).

By notice dated July 31, 2012, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-5).

Plaintiff filed the present action on March 20, 2013. She assigns error to the ALJ's finding that she did not meet Listing 12.05C and his decision to give "little weight" to the opinion of her treating physician, Dr. Thomas Clayton. Plaintiff also assigns error to the ALJ's assessment of her credibility and subjective complaints of pain. See Plaintiff's "Brief … in Support ..." at 1 (document #13). Finally, Plaintiff assigns error to the ALJ's hypothetical

question to the V.E. Id. The parties' cross- motions are ripe for disposition.

## II. **STANDARD OF REVIEW**

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the

6

Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled," as defined for Social Security purposes, before the expiration of her insured status on December 31, 2008.[7] Plaintiff first argues that the ALJ erred in finding that she did not meet Listing 12.05C. The undersigned concludes that the ALJ's determination on this issue is supported by substantial evidence.

While Plaintiff obtained a verbal IQ of 69 in June 2005 (Tr. 274), the ALJ found that this score was not consistent with other evidence in the record. "[A]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012). Here, the ALJ found that Plaintiff's June 2005 IQ score was not consistent with the test scores in her school records or with the findings in Dr. Woods' March 2005 consultative examination. (Tr. 463). The ALJ also relied upon the medical expert's opinion that the record did not support a determination that Plaintiff's impairment met Listing Section 12.05. (Tr. 463). Plaintiff's school

---

[7] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

7

records established that she was administered the WISC-R in February 1989. She achieved a verbal IQ score in the 9th percentile, a performance IQ score in the 73rd percentile, and a full IQ score in the 32nd percentile (Tr. 117). Those scores exceeded her 2005 IQ results that placed her in the 5th percentile. (Tr. 274). Dr. Woods found that Plaintiff's IQ was in the 90's during the 2005 consultative examination. (Tr. 255). Dr. Cottone testified that there was no support for a finding that Plaintiff's impairment met a listing during the relevant period. Her school records demonstrated that she earned passing grades in her regular courses despite having a mild to moderate learning disability. (Tr. 667). Dr. Cottone also agreed with Dr. Carraway's opinion[8] that Plaintiff could understand, retain, and follow simple directions and sustain attention for simple, repetitive tasks. (Tr. 670). Dr. Cottone disagreed with Ms. Tulou's psychological evaluation that was based on Plaintiff's testimony and had no support in the record (Tr. 673). In addition Ms. Tulou did not have access to Plaintiff's school records. (Tr. 678).

The ALJ's finding that Plaintiff failed to carry her burden of showing deficits in adaptive functioning is also supported by substantial evidence. The record contains evidence that she went shopping, paid bills, made change, cared for small children, performed the majority of her housework, attended school to obtain a GED, and did puzzles for entertainment. Hancock, 667 F.3d at 476. The record further establishes that Plaintiff takes her children to school, cooks (Tr. 72), cares for her pets, attends to her own personal care (Tr. 73), does laundry (Tr. 74), and manages her savings and checking accounts. (Tr. 75). Plaintiff also reads, has visitors, talks on the telephone four or five times a week, attends church, and visits her mother-in-law's home.

---

[8] Dr. Cararway opined that Plaintiff's attention and concentration were intact, and that she had a mild impairment in short-term and immediate memory; a minimal impairment in her ability to understand, retain, and perform instructions, engage in task persistence, and perform simple, routine tasks; and might have difficulty with interpersonal relationships in a work setting. (Tr. 285).

8

(Tr. 76). While Plaintiff acknowledged limitations in her ability to perform daily activities, she attributed them to her physical and not cognitive impairments. (Tr. 79).

The ALJ considered the results of Plaintiff's childhood educational testing, and concluded that they were inconsistent with her present IQ scores. (Tr. 463). Although Plaintiff's childhood history of abuse clearly caused difficulties with her family relationships, it does not rise to the level of deficits in her adaptive functioning.

Plaintiff next argues that the ALJ erred in assessing her RFC by failing to assign controlling weight to a checklist opinion provided by her treating physician, Dr. Clayton. The ALJ's RFC determination and his treatment of Dr. Clayton's opinion are supported by substantial evidence.

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

On December 18, 2007, Dr. Clayton completed a "Medical Opinion Regarding Claimant's Functional Limitations." (Tr. 421-422). He diagnosed Plaintiff with asthma and a history of a pulmonary emboli. He opined that as a result of those conditions, Plaintiff could

9

stand/walk for less than two hours in an eight-hour day; sit for four hours in an eight-hour day; and lift/carry five pounds in a competitive work situation. (Tr. 421). Dr. Clayton also found that Plaintiff could not bend or twist, and that she would miss more than three days of work per month. (Tr. 422).

The ALJ considered Dr. Clayton's opinion and concluded that it was entitled to little weight. (Tr. 466). In reaching that conclusion, the ALJ noted that the objective physical evidence demonstrated that Plaintiff did not have severe limitations due to her breathing. (Tr. 466). The ALJ also found that Dr. Clayton's opinion was based on Plaintiff's subjective complaints, and was not supported by her treatment history. (Tr. 466). The evidence in the record supports the ALJ's conclusion, as Plaintiff's treatment notes reveal that her lungs were clear; (Tr. 150, 152, 154, 243, 246-247, 249-250, 252, 254, 393, 396, 402-403, 409), that she was not experiencing any respiratory distress (Tr. 187, 362, 373); and that her chest x-rays and CT scans were within normal limits. (Tr. 229, 382-383, 621, 623, 636, 642). The ALJ's rationale for giving little weight to Dr. Clayton's opinion was also proper. A treating physician's opinion that is not supported by clinical evidence or is inconsistent with other substantial evidence, "should be accorded significantly less weight." Mastro, 270 F.3d at 178 (citing Craig, 76 F.3d at 590). The ALJ may also accord little weight to a treating physician's opinion that is based primarily on a claimant's subjective complaints. Id.    See also Morris v. Barnhart, No. 03-1332, 2003 WL 22436040, at *4 (3d Cir. Oct. 28, 2003) ("the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." ) (citing Craig, 76 F.3d at 590 n.2). "The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition.'" Brewton v. Astrue, No. 1:09cv188, 2010

WL 3259800, at *6 (W.D.N.C. July 26, 2010) (quoting Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)) adopted 2010 WL 3259795 (W.D.N.C. Aug. 18, 2010).

For those reasons, the ALJ's decision to afford "little weight" to Dr. Clayton's opinion is supported by substantial evidence.

Plaintiff next argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b) and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

In evaluating a plaintiff's credibility, the ALJ will consider consider factors such as his or her medical history, laboratory findings, treatment history, and reported daily activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). Contrary to Plaintiff's assignment of error, the ALJ is not

11

required to discuss each factor enumerated in 20 C.F.R. §§ 404.1529(c), 416.929(c). Rather, the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The ALJ considered Plaintiff's contentions and her testimony regarding the location of her pain, her functional limitations, and her treatment. (Tr. 464). The record contains evidence of Plaintiff's learning disorder, depression, obesity, and osteoarthritis of the knee – which could be expected to produce some of the symptoms claimed by Plaintiff. Accordingly, the ALJ found that Plaintiff met the first prong of the test.

The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. This determination is supported by substantial evidence. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with her RFC covering a range of sedentary work. (Tr. 463-464). The ALJ found that Plaintiff had physical and mental impairments that caused limitations. He accounted for those limitations by finding that she was only capable of sedentary work with additional postural, environmental, and mental limitations that accounted for her osteoarthritis, obesity, and mental impairments. (Tr. 467). The ALJ found that Plaintiff's contentions as to further limitations were not supported by the objective medical evidence in the record. (Tr. 467).

In evaluating Plaintiff's credibility, the ALJ found that Plaintiff's daily activities were inconsistent with her alleged disability. The ALJ went on to state that:

> [a] person with the alleged cognitive deficits they found would most likely not be capable of taking care of multiple children, cooking meals, cleaning, doing laundry, going out on her own several times daily, driving, shopping, and managing her own finances, which are all activities the claimant admitted she could perform.

(Tr. 467). The regulations allow this type of evidence to be considered in evaluating Plaintiff's credibility. See 20 CFR §§ 404.1529(c)(3) & 404.1529(c)(3)(i) (claimant's "daily activities" and "pattern of daily living" are "important indicator[s] of the intensity and persistence of [her] symptoms"); SSR 96-7p, available at 1996 WL 374186, at *3, *5 & *7 ("daily activities" are material to assessment of claimant's credibility). The ALJ is entitled to discount complaints by a claimant who is able to engage in the kinds of activities as Plaintiff did here. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding that claimant's routine activities – including attending church, visiting relatives, reading, watching television, cooking, cleaning the house, and doing laundry – were inconsistent with complaints of pain); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("the pattern of [claimant's] daily activity" – including socializing, walking to town, grocery shopping, cooking, washing dishes, and generally taking care of a house – "suggests that he was not disabled from working").

Plaintiff assigns error to the ALJ's Step Five determination, by contending that his hypothetical question to the V.E. was incomplete. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (holding that vocational expert testimony as to the existence of jobs will only constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC). This assignment of error is based upon the ALJ's evaluation of Dr. Clayton's opinion, Plaintiff's RFC and her credibility. For the same reasons discussed above, this assignment of error also fails.

Although the medical records establish that Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #12) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16

(4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: October 21, 2013

_____
David S. Cayer
United States Magistrate Judge